# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANGEL MARTINEZ ALICEA | ) | |
| (p/k/a RUF EL FANTAZTIKO), | ) | |
| REYNALDO COLON VEGA | ) | |
| (p/k/a LIMITS), GERRY CAPO | ) | CIVIL ACTION NO.: |
| HERNANDEZ (p/k/a LIONIZE), | ) | |
| JOSE DELGADO (p/k/a BUK DOLLAR) | ) | |
| AND FREDDY MONTALVO | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LT'S BENJAMIN RECORDS, INC., | ) | |
| FRANCISCO SALDANA (p/k/a LUNY), | ) | |
| VICTOR CABRERA (p/k/a TUNES), | ) | |
| RAMON AYALA (p/k/a DADDY | ) | |
| YANKEE), MACHETE MUSIC, | ) | |
| UNIVERSAL MUSIC DISTRUBTION | ) | |
| CORP., LOS CANGRIS PUBLISHING | ) | |
| AND EL CARTEL RECORDS | ) | |
| | | |
| Defendants | | |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, Angel Martinez Alicea (p/k/a Ruf El Fantaztiko), Reynaldo Colon Vega (p/k/a Limits), Gerry Capo Hernandez (p/k/a Lionize), Jose Delgado (p/k/a Buk Dollar) and Freddy Montalvo (collectively "Plaintiffs"), by and through their attorney, David A. Mech, Esq., for their complaint, allege, upon knowledge and upon information and belief, the following against defendants, LT'S Benjamin Records, Inc., Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes), Ramon Ayala (p/k/a Yankee Daddy), Machete Music, Universal Music Distribution Corp., Los Congris Publishing and El Cartel Records (collectively, "Defendants"):

## **NATURE OF THE ACTION**

1.      This is a civil action for breach of contract, direct, contributory and/or vicarious copyright infringement, fraudulent inducement of services, unjust enrichment, false designation of origin under the Lanham Act, a declaration of joint authorship and an accounting of all relevant sales on behalf of Plaintiffs, the authors, creators, composers, producers, arrangers, performers and copyright owners of original musical compositions (the "Original Compositions") that were unlawfully used to create the musical compositions entitled, "MSN," "Ella Me Amo," "Carita Bonita," and "La Carta (the "Infringing Compositions"), which were included as musical tracks on the album entitled, "Luny Tunes Presents: Erre XI" and the musical composition entitled "Salgo Pa La Calle" (the "Infringing Daddy Yankee Composition"), which was included as musical track number seven (7) on the album entitled, "Talento De Barrio" and in the film also entitled, "Talento De Barrio" (the "Infringing Compositions" and the "Infringing Daddy Yankee Composition" are collectively referred to herein as the "Infringing Musical Works").

2.      Defendants, jointly and/or severally, willfully and intentionally: (i) manufactured, distributed, used, commercialized, sold and otherwise exploited the Infringing Musical Works, containing the original underlying musical compositions (the "Original Compositions") of the Plaintiffs without the written authorization or consent of the Plaintiffs; (ii) falsely identified themselves as the authors, creators, composers, producers, arrangers, performers and copyright owners of the Original Compositions; (iii) induced and/or caused various third parties, including, but not limited to, various radio stations and theatrical outlets to broadcast, publicly perform and otherwise exploit the Infringing Musical Works throughout the United States and overseas without Plaintiffs written authorization or consent; (iv) unlawfully profited from the unauthorized manufacturing, distribution, use, commercialization, sale, broadcasting, public performance and other exploitation of the Infringing Musical Works, containing the Original Compositions; and (v) deprived the Plaintiffs of substantial income, proceeds, fees, royalties and other remuneration directly and/or indirectly related to the distribution, use, commercialization, sale, broadcasting, public performance, licensing and other exploitation of the Infringing Musical Works, containing the Original Compositions.

2

3.      By this action, Plaintiffs seek a declaration from this Court that each is an author, creator, composer, producer, arranger, performer and co-owner of copyright in the Original Compositions; and that Defendants: (i) knowingly, willfully and intentionally infringed Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501; (ii) induced, caused and/or materially contributed to the infringement of Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions by others in violation of the Copyright Act, 17 U.S.C. §§ 105, 115 and 501; (iii) fraudulently induced Plaintiffs to create, author, produce, arrange, and perform the Original Compositions; (iv) were unjustly enriched by the services performed by the Plaintiffs in creating, authoring, producing, arranging and performing the Original Compositions; (v) deprived Plaintiffs of substantial income, proceeds, fees, royalties and other remuneration, directly and/or indirectly related to Defendants' distribution, use, commercialization, sale, broadcasting, public performance, licensing and other exploitation of the Infringing Musical Works, containing the Original Compositions.

4.      By this action, Plaintiffs demand an accounting of all income, profits and/or royalties generated by the distribution, sale, use, commercialization, public performance and other exploitation of the Original Composition, via the exploitation of the Infringing Musical Works by the Defendants.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 1338 (a) and (b), 17 U.S.C. §§ 101 et seq.  This court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

6.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391 (b) as a substantial portion of the events or omissions giving rise to the Plaintiffs' causes of action occurred in this district and/or the Defendants transact business in this judicial district.

## PARTIES

3

7.      Plaintiff, Angel Martinez Alicea (p/k/a Ruf El Fantaztiko), is a known and talented producer, composer, arranger, author and performer of musical compositions and beats in the musical genre known as reggaeton.  Mr. Alicea is a copyright owner, producer, composer and arranger of the Original Compositions.  Portions of his musical compositions and beats were used and incorporated into the Infringing Musical Works. Mr. Alicea signed an Exclusive Management Agreement and Exclusive Producer Agreement with Mas Flow, Inc. and LT's Benjamin Records Inc as its successor in interest.  Mr. Alicea resides in Springfield, Hampden County, Massachusetts.

8.      Plaintiff, Reynaldo Colon Vega (p/k/a Limits), is a known and talented producer, composer, arranger, author and performer of musical compositions and beats in the musical genre known as reggaeton. Mr. Vega is a copyright owner and performer of the Original Compositions.  Portions of his performance were used and incorporated into the Infringing Musical Works.  Mr. Vega signed an Exclusive Management Agreement and Exclusive Recording Agreement with Mas Flow, Inc. and LT's Benjamin Records Inc as its successor in interest.  Mr. Vega resides in Springfield, Hampden County, Massachusetts.

9.      Plaintiff, Gerry Capo Hernandez (p/k/a Lionize), is a well-known and talented reggaeton artist/performer and a member of the duo known as "Erre XI" with reggaeton artist Rafo Ramirez.  Mr. Capo is a copyright owner and performer of the Original Compositions. Portions of his performance were used and incorporated into the Infringing Musical Works. Mr. Capo signed an Exclusive Management Agreement and Exclusive Recording Agreement with Mas Flow, Inc. and LT's Benjamin Records Inc as its successor in interest.  Mr. Capo resides in Springfield, Hampden County, Massachusetts.

10.      Plaintiff, Jose Delgado (p/k/a Buk Dollar) is a D.J., producer and sound engineer. He is the owner of the recording studio, "Puro Material" in Springfield, MA.  Mr. Delgado and the other Plaintiffs work together frequently as collaborators in his studio, recording and producing signed and unsigned musical artists.  Mr. Delgado resides in Springfield, Hampden County, Massachusetts.

11.      Plaintiff, Freddy Montalvo is a known and talented producer, composer, arranger, author and performer of musical compositions and beats in the musical genre known as reggaeton. Mr. Montalvo is a copyright owner and performer of the Original Compositions.

4

Portions of his performance were used and incorporated into the Infringing Musical Works. Mr. Montalvo signed an Exclusive Management Agreement and Exclusive Recording Agreement with Mas Flow, Inc. and LT's Benjamin Records Inc as its successor in interest. Mr. Montalvo resides in Springfield, Hampden County, Massachusetts.

12.     Defendant, LT's Benjamin Records, Inc., is a corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Carolina, Puerto Rico.  The company is a successor in interest of Mas Flow Inc. an independent record label founded by Defendants, Francisco Saldana (p/k/a Luny) and Victor Carbrera (p/k/a Tunes).  Upon information and belief, LT's Benjamin Records, Inc. either claims a copyright interest in the Infringing Musical Works, or has exercised rights of a copyright owner of the Infringing Musical works.  Upon information and belief, LT's Benjamin Records has materially breached its contractual obligations to the Plaintiffs.

13.     Defendant, Francisco Saldana (p/k/a Luny) is a successful and well-known producer of reggaeton music and a member of the production duo known as, "Luny Tunes." Mr. Saldana is a co-founder of the record label Mas Flow, Inc. and its successor in interest, LT's Benjamin Records, Inc.  On the album, "Luny Tunes Presents: Erre XI", Mr. Saldana, as part of the production duo, Luny Tunes, claims credit as an Executive Producer.  Upon information and believe, as an executive producer, Mr. Saldana was responsible for the business side of production, distribution and promotion of the album, along with providing artistic input as to which songs were placed in the final cut of the recording.  Upon information and belief, Mr. Saldana either claims a copyright interest in the Infringing Musical Works, or has exercised rights of a copyright owner of the Infringing Musical works.

14.     Defendant, Victor Carbrera (p/k/a Tunes) is a successful and well-known producer of reggaeton music and a member of the production duo known as, "Luny Tunes." Mr. Carbrera is a co-founder of the record label Mas Flow, Inc. and its successor in interest, LT's Benjamin Records, Inc.  On the album, "Luny Tunes Presents: Erre IX", Mr. Carbrera, as part of the production duo, Luny Tunes, claims credit as an Executive Producer.  Upon information and believe, as an executive producer, Mr. Carbrera was responsible for the business side of production, distribution and promotion of the album, along with providing artistic input as to which songs were placed in the final cut of the recording.  Upon

information and belief, Mr. Carbrera either claims a copyright interest in the Infringing
Musical Works, or has exercised rights of a copyright owner of the Infringing Musical works.

15.    Defendant, Ramon Ayala (p/k/a Yankee Daddy), is a successful and well-known
musical performer, specifically of reggaeton music. He is considered one of the most
successful Latin musical performers of all time.  He tours and sells music throughout the
United States and the world.  Mr. Ayala released the album, "Talento de Barrio" in August
2008 on El Cartel Records.  The album was billed as the soundtrack for the film of the same
name.  The album entered the Top 5 of the *Billboard* Top Soundtracks chart peaking at
number 3.  The musical composition entitled "Salgo Pa La Calle" (the "Infringing Daddy
Yankee Composition") is included as musical track number seven (7) on this album.  Mr.
Ayala is a citizen of Puerto Rico.  Upon information and belief, Mr. Ayala either claims a
copyright interest the Infringing Daddy Yankee Composition, or has exercised rights of a
copyright owner of the Infringing Daddy Yankee Composition.

16.    Defendant, Machete Music is the Latin music division of Universal Music Group.
Machete is engaged in the business of marketing, selling and otherwise exploiting musical
compositions.   Upon information and belief, Machete was responsible in whole or in part
for the distribution, marketing, selling, commercialization and otherwise exploitation of the
albums, "Talento de Barrio" and "Luny Tunes Presents: Erre XI."  Upon information or
belief, Machete Music either claims a copyright interest in the Infringing Musical Works, or
has exercised rights of a copyright owner of the Infringing Musical works.

17.    Defendant, Universal Music Distribution Corp. ("UMD) is a division of Universal
Music Group ("UMG") a corporation duly organized and existing under the laws of the State
of Delaware, with its principal place of business in the State of California.  UMD handles
distribution services for all of UMG's wholly-owned and associated labels, including
Defendant, Machete Music. UMD is the distributor for the albums, "Talento de Barrio" and
"Luny Tunes Presents: Erre XI."  Upon information and belief, UMD directly or indirectly
created, manufactured, distributed, used, commercialized, sold and otherwise exploited the
Infringing Musical Works, containing the Original Compositions.

18.    Defendant, Los Cangris Music Publishing is the publishing company owned by
Defendant, Ramon Ayala and located in Carolina, Puerto Rico. Los Cangris is listed as a

music publisher of the musical composition entitled "Salgo Pa La Calle" (the "Infringing Daddy Yankee Composition").

19.    Defendant, El Cartel Records is an independent record label.  Upon information and belief, El Cartel is a corporation duly organized under the laws of Puerto Rico with its principal place of business in San Juan, Puerto Rico.  Upon information and belief, Defendant Ayala owns and operates El Cartel Records.  El Cartel is the label that released Mr. Ayala's album, "Talento de Barrio."

## STATEMENT OF FACTS

### I.    Plaintiffs Create the Compositions, Produce and Record Masters

20.    Plaintiffs repeat the allegations contained in paragraphs 1 through 19 and, by this reference, incorporate them herein.

21.    On or about early Spring 2007, Defendants, Francisco Saldana (p/k/a Luny) and Victor Carbrera (p/k/a Tunes) (hereinafter "Luny Tunes") contacted Plaintiff, Gerry Capo and invited him to come to their recording studio in Carolina, P.R. to record and perform on the album, "Luny Tunes Presents:  Erre IX" (hereinafter, "Erre IX").

22.    On or about early Spring 2007, Plaintiff, Capo signed an Exclusive Management Agreement and an Exclusive Recording Agreement (the "Capo Agreements") with Defendant, LT's Benjamin Records (successor in interest of Mas Flow, Inc.) (A copy of each of the Capo Agreements is attached hereto as Exhibit A and Exhibit B).

23.    Pursuant to the terms of the Exclusive Recording Agreement, Plaintiff Capo agreed that he would perform for the recording of Masters to be delivered to Defendant, LT's Benjamin Records.  In exchange for his services as a recording artist, Mr. Capo was to receive an advance of $1000.00 upon the delivery of each album and certain royalty payments, including mechanical royalties, in connection with net sales of albums.

24.    Shortly after arriving in P. R., and after some creative difficulty between Mr. Capo and Luny Tunes, Mr. Capo suggested Luny Tunes invite his colleagues, Plaintiffs, Angel Martinez Alicea (p/k/a Ruf El Fantaztiko), Reynaldo Colon Vega (p/k/a Limits), and Freddy Montalvo (collectively, the "Springfield Crew") to help complete the project of

composing, authoring, creating, producing and performing the Original Compositions for the album, Erre IX.

25.     On or about early Spring 2007, Defendants, Luny Tunes" contacted the Springfield Crew and invited them down to the studio in P.R. to help complete the Erre IX album.

26.     On or about June 23, 2007, Plaintiff, Vega signed an Exclusive Management Agreement and an Exclusive Recording Agreement (the "Vega Agreements") with Defendant, LT's Benjamin Records (successor in interest of Mas Flow, Inc.) (A copy of each of the Vega Agreements is attached hereto as Exhibit C and Exhibit D).

27.     Pursuant to the terms of the Exclusive Recording Agreement, Plaintiff Vega agreed that he would perform for the recording of Masters to be delivered to Defendant, LT's Benjamin Records.  In exchange for his services as a recording artist, Mr. Vega was to receive an advance of $1000.00 upon the delivery of each album and certain royalty payments, including mechanical royalties, in connection with net sales of albums.

28.     On or about June 28, 2007, Plaintiff Alicea, signed an Exclusive Management Agreement and an Exclusive Producer Agreement (the "Alicea Agreements") with Defendant, LT's Benjamin Records (successor in interest of Mas Flow, Inc.) (A copy of each of the Alicea Agreements is attached hereto as Exhibit E and Exhibit F).

29.     Pursuant to the terms of the Exclusive Producer Agreement, Plaintiff Alicea agreed to act as producer and deliver master recordings to Defendant, LT's Benjamin Records.  In exchange for his services as a producer, Mr. Alicea was to receive an advance payment of $500.00 upon execution of the agreement, an additional total advance of $30,000 upon delivery of each album subject to the production agreement and certain royalty payments, including mechanical royalties, in connection with net sales of albums.

30.     On or about June 2007, Plaintiff, Montalvo signed an Exclusive Management Agreement and an Exclusive Recording Agreement (the "Montalvo Agreements") with Defendant, LT's Benjamin Records (successor in interest of Mas Flow, Inc.) (A copy of each of the Vega Agreements is attached hereto as Exhibit G and Exhibit H).

31.     Pursuant to the terms of the Exclusive Recording Agreement, Plaintiff Montalvo agreed that he would perform for the recording of Masters to be delivered to Defendant, LT's Benjamin Records.  In exchange for his services as a recording artist, Mr. Montalvo was to receive an advance of $1000.00 upon the delivery of each album and certain royalty payments, including mechanical royalties, in connection with net sales of albums.

32.     The Plaintiffs each agreed that each Master, Video and Artwork made under their Agreements would be considered "works made for hire", except and excluding, per the terms of their Agreements, the copyright in the Compositions contained therein, of which the Plaintiffs were to remain the exclusive owners.

33.     For the next seven (7) to twelve (12) months, the Plaintiffs worked diligently, and in good faith, pursuant to the terms of their Agreements and composed, authored, created, produced and performed between 30 and 40 musical works. (A list of the Original Compositions and performance and production credits is attached hereto as Exhibit I). It was Plaintiffs' expectation that Defendants LT's Benjamin Records, Francisco Saldana (p/k/a Luny) and Victor Carbrera (p/k/a Tunes) would fulfill their obligation under the Agreements.

34.     While in P.R. for this period of time the Plaintiffs were provided with sub-standard accommodations, living in a portion of Defendant, Francisco Saldana's (p/k/a Luny) house, without furniture, sleeping on the floor.

35.      The Plaintiffs were often locked into the room by Defendants, Luny Tunes, who would secure the door from the outside using a belt. The room was jokingly referred to by Luny Tunes as the "Luny Bin."

36.     At the end of the time period, the Plaintiffs delivered to Luny Tunes 30 to 40 master recordings, containing original musical works.

37.     To date, and despite Plaintiffs requests, Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny) and Victor Carbrera (p/k/a Tunes) have failed to pay to Plaintiffs the agreed to advances, fees, royalty payments, and mechanical royalties in connection with net sales of albums, "Luny Tunes Presents: Erre XI" and "Talento de Barrio", the two albums on which the Original Compositions, beats and performances were incorporated.

**II.**   **Defendants' Infringing Conduct**

38.    Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee) took the Original Compositions and included them, in whole, in part and in re-edited versions, in the Infringing Musical Works and commercially released and distributed those Infringing Musical Works via Defendants, Machete Music, Universal Music Distribution Corp., Los Cangris Music Publishing and El Cartel Records.

39.    Defendants, Machete Music, Universal Music Distribution Corp., Los Cangris Music Publishing and El Cartel Records directly or indirectly created, manufactured, distributed, used, commercialized, sold and otherwise exploited the Infringing Musical Works, containing the Original Compositions.

40.    Defendants knowingly, willfully, and intentionally caused third parties including, but not limited to, various television, radio stations to broadcast, to publicly perform and otherwise exploit the Original Compositions through the Infringing Musical Works, throughout the United States and overseas.

41.    Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee) falsely and fraudulently attributed authorship of the Infringing Musical Works to themselves by identifying themselves as the sole writers, producers and performers of the Original Compositions contained in the Infringing Musical Works.

42.    The two albums containing the Infringing Musical Works have both been critical and commercial successes with Daddy Yankees' album, "Talento de Barrio" selling over 1,000,000 albums worldwide.

## STATEMENT OF CLAIMS

### Count I
### Breach of Contract

43.     Plaintiffs repeat the allegations contained in paragraphs 20 through 42 and, by this reference, incorporate them herein.

44.     Plaintiffs have performed all of their obligations under the terms of their Agreements with Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes).

45.     Despite due demand, the Defendants LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), have failed to pay to Plaintiffs the agreed to advances, fees, royalty payments, and mechanical royalties in connection with net sales of albums, "Luny Tunes Presents: Erre XI" and "Talento de Barrio."

46.     The Defendants' failure to pay said advances, fees, royalty payments, and mechanical royalties in connection with net sales of albums, "Luny Tunes Presents: Erre XI" and "Talento de Barrio" constitutes a material breach of the Agreements between Defendants and Plaintiffs, Alicea and Vega.

47.     As a result of the Defendants' material breach of the Agreements, the Defendants are liable to Plaintiffs for the total amount of income, monies, royalties and other remuneration Plaintiffs are reasonably entitled to receive, as a result of services rendered by Plaintiffs in creating, composing, arranging, authoring, producing and/or performing the Original Compositions embodied in the Infringing Musical Works, in an amount to be established at trial, but are in no event less than $1,000,000 (ONE MILLION DOLLARS).

## Count II
### Fraudulent Inducement of Services

48.     Plaintiffs repeat the allegations contained in paragraphs 43 through 47 and, by this reference, incorporate them herein.

49.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), induced and/or encouraged Plaintiffs to produce, compose, arrange, author, perform and/or create the Original Compositions.

50.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), agreed in writing that in exchange for Plaintiffs' services, Plaintiffs would receive advances, fees, royalty payments, and mechanical royalties in connection with net sales of albums, "Luny Tunes Presents: Erre XI" and "Talento de Barrio."

51.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), knew that Plaintiffs, in exchange for producing, composing, arranging, authoring, performing and/or creating the Original Compositions expected to receive agreed to advances, fees, royalty payments, and mechanical royalties in connection with net sales of albums, "Luny Tunes Presents: Erre XI" and "Talento de Barrio."

52.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), made numerous misrepresentations to Plaintiffs, calculated to induce them into signing Agreements and traveling to Puerto Rico to produce, compose, arrange, author, perform and/or create the Original Compositions.

53.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), made these misrepresentations knowing they did not intend to honor the terms of the Agreements with Plaintiffs.

54.     Plaintiffs relied on the misrepresentations in entering into the Agreements and in traveling to Puerto Rico to work with Defendants and would not have done so, but for those misrepresentations.

55.     As a result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered and will continue to suffer substantial damages, including, but not limited to loss of income and economic and non-economic injuries and damages. Plaintiffs are therefore entitled to recover an award of actual and compensatory damages in an amount to be determined at trial, but are in no event less than $1,000,000 (ONE MILLION DOLLARS).

## Count III

### Unjust Enrichment

56.     Plaintiffs repeat the allegations contained in paragraphs 48 through 55 and, by this reference, incorporate them herein.

57.     Plaintiffs in good faith and in reliance on the promises and representations made by Defendants, produced, composed, arranged, authored, performed and/or created the Original Compositions.

58.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee): (i) consented and agreed to the services rendered by Plaintiffs in producing, composing, arranging, authoring, performing and/or creating the Original Compositions; and (ii) knew that Plaintiffs expected to receive the benefits of their Agreements with Defendants for rendering the services.

59.     Upon information and belief, Defendants received substantial economic benefits from the services rendered by Plaintiffs in producing, composing, arranging, authoring, performing and/or creating the Original Compositions and were unjustly enriched by the distribution, use, commercialization, sale, broadcasting, public performance and other exploitation of the Infringing Musical Works, containing the Original Compositions.

60.     Plaintiffs are therefore entitled to receive income, monies, royalties and other remuneration, as a result of services rendered by Plaintiffs in creating, composing, arranging, authoring, producing and/or performing the Original Compositions embodied in the Infringing Musical Works, in an amount to be established at trial, but are in no event less than $$1,000,000 (ONE MILLION DOLLARS).

## Count IV

### Direct Copyright Infringement

61.     Plaintiffs repeat the allegations contained in paragraphs 56 through 60 and, by this reference, incorporate them herein.

62.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), directly infringed Plaintiffs

copyrights and exclusive rights, in and relating to the Original Compositions, under copyright law by manufacturing, distributing, using, commercializing, selling, broadcasting, publicly performing and otherwise exploiting the Infringing Musical Works containing the Original Compositions without Plaintiffs' written authorization or written consent, all in violation of Copyright Act, 17 U.S.C. §§ 106, 115 and 501.

63.     The foregoing acts of infringement by Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), have been willful, intentional, purposeful and/or with a complete disregard to Plaintiffs' copyrights and exclusive rights in and to the Original Compositions.

64.     As a direct and proximate result of the acts of infringement committed by Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), Plaintiffs have suffered, and will continue to suffer substantial economic and non-economic injuries and damages.

65.     Plaintiffs are therefore entitled to recover actual damages suffered as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions in an amount to be established at trial, but are in no event less than $1,000,000 (ONE MILLION DOLLARS).

66.     Plaintiffs are further entitled to attorneys fees and full costs pursuant to the Copyright Act, 17 U.S.C. §505.


## Count IV

### Contributory Copyright Infringement

67.     Plaintiffs repeat the allegations contained in paragraphs 61 through 66 and, by this reference, incorporate them herein.

68.     Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), willfully, knowingly and intentionally induced, caused, encouraged and/or assisted various third parties, including, but not limited to, various radio and televisions stations, to broadcast, publicly perform and/or

otherwise exploit the Infringing Musical Works, containing the Original Compositions, throughout the United States and Overseas even though Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), knew or should have known, that they did not have Plaintiffs' written authorization or written consent to reproduce, broadcast, publicly perform or otherwise exploit the Original Compositions.

69.     The conduct of the Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), constitutes contributory infringement of Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions in violation of the Copyright Act, 17 U.S.C. §§106, 115 and 501.

70.     As a direct and proximate result of the acts of contributory infringement committed by Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee), Plaintiffs have suffered, and will continue to suffer substantial economic and non-economic injuries and damages.

71.     Plaintiffs are therefore entitled to recover actual damages suffered as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions in an amount to be established at trial, but are in no event less than $1,000,000 (ONE MILLION DOLLARS).

72.     Plaintiffs are further entitled to attorneys fees and full costs pursuant to the Copyright Act, 17 U.S.C. §505.

## Count V

### Vicarious Copyright Infringement

73.     Plaintiffs repeat the allegations contained in paragraphs 67 through 72 and, by this reference, incorporate them herein.

74.     Defendants, Machete Music, Universal Music Distribution Corp., Los Congris Publishing and El Cartel Records and their employees, agents and representatives,

15

commercially released and/or distributed the Infringing Musical Works, containing the Original Compositions in the United States and overseas.

75.     Defendants, Machete Music, Universal Music Distribution Corp., Los Congris Publishing and El Cartel Records and their employees, agents and representatives: (i) falsely indentified and designated a person or persons other than the Plaintiffs as the author, creator, performer, producer and or arranger of the Infringing Musical Works; (ii) manufactured, distributed, used, commercialized, sold and otherwise exploited the Infringing Musical Works; (iii) unlawfully profited from said exploitation of the Infringing Musical Works; and (iv) deprived Plaintiffs of substantial income directly or indirectly related to the exploitation of the Infringing Musical Works.

76.     Defendants, Machete Music, Universal Music Distribution Corp., Los Congris Publishing and El Cartel Records and their employees, agents and representatives have the right and ability to manage, supervise and control the Infringing Musical Works and have a direct financial interest in the Infringing Musical Works.

77.     Defendants, Machete Music, Universal Music Distribution Corp., Los Congris Publishing and El Cartel Records, derived substantial financial benefit from the infringing conduct of Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee) and as a result vicariously infringed Plaintiffs' copyright and exclusive rights in and to the Original Compositions, in violation of the Copyright Act, 17 U.S.C. §§106, 115 and 501.

78.     As a direct and proximate result of the acts of vicarious infringement committed by Machete Music, Universal Music Distribution Corp., Los Congris Publishing and El Cartel Records, Plaintiffs have suffered, and will continue to suffer substantial economic and non-economic injuries and damages.

79.     Plaintiffs are therefore entitled to recover actual damages suffered as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions in an amount to be established at trial, but are in no event less than $1,000,000 (ONE MILLION DOLLARS).

16

80.    Plaintiffs are further entitled to attorneys fees and full costs pursuant to the Copyright Act, 17 U.S.C. §505.

## REQUESTS FOR RELIEF

WHEREFORE, the Plaintiffs, requests that this Court:

1. Enter judgment for Plaintiffs on all counts of this Complaint;

2. Declare the Plaintiffs each an author, creator, composer, producer, arranger, performer and co-owner of copyright in the Original Compositions

3. Award Plaintiffs all income, monies, royalties and other remuneration Plaintiffs are reasonably entitled to receive, as a result of Defendants breach of contract for the services rendered by Plaintiffs in creating, composing, arranging, authoring, producing and/or performing the Original Compositions embodied in the Infringing Musical Works, in an amount to be establishing at trial, but which  are in no event less than $$1,000,000 (ONE MILLION DOLLARS);

4. Award Plaintiffs their actual and compensatory damages and any and all gains, profits and advantages Defendants obtained as a result of falsely designating Defendants, LT's Benjamin Records, Francisco Saldana (p/k/a Luny), Victor Carbrera (p/k/a Tunes) and Ramon Ayala (p/k/a Daddy Yankee)  as the sole creators, producers, authors, arrangers and/or composers of the Infringing Musical Works, containing the Original Compositions,  in an amount to be establishing at trial, but which  are in no event less than $1,000,000 (ONE MILLION DOLLARS);

5. Order the Defendants to render an accounting to ascertain the total amount of proceeds, royalties, profits, fees, licenses and other compensation Defendants received as a result of Defendants' unlawful distribution, sale, use, commercialization, licensing, broadcasting, public performance, and other exploitation of the Infringing Musical Works, containing the Original Compositions and award Plaintiffs any such proceeds, royalties, profits, fees, licenses and other compensation.

6. Award Plaintiffs their actual and compensatory damages as a direct result and proximate cause of Defendants' unjust enrichment at Plaintiffs' expense, in an amount to be establishing at trial, but which  are in no event less than $1,000,000 (ONE MILLION DOLLARS);

7. Award Plaintiffs any and all gross revenue, income and/or profits derived by Defendants that are attributable to their direct, contributory and/or vicarious infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions, in an amount to be establishing at trial, but which  are in no event less than $1,000,000 (ONE MILLION DOLLARS);

8. Award Plaintiffs reasonable attorneys' fees, costs and expenses relating to this action;

9. Award Plaintiffs statutory damages, upon election by Plaintiffs prior to final judgment and in lieu of actual damages and profits from copyright infringement pursuant to the Copyright Act, U.S.C. 17 §504 (c); and

10. Grant Plaintiffs such other relief as the Court may deem just and proper.


**JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.


Dated:  January5, 2010

Respectfully Submitted,

____/s/ David A. Mech_____
David A. Mech, Esq., BBO# 551091
Law Offices of David A. Mech
1 Crescent Hill
Springfield, MA 01105
413-734-1070
Fax 413-747-7609
*Attorney for Plaintiffs*