UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANGEL MARTINEZ ALICEA, ET AL., | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) C.A. NO. 10-cv-30002-MAP |
| | ) |
| MACHETE MUSIC and UMG RECORDINGS, INC., | ) |
| Defendants | ) |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, PLAINTIFFS' MOTION
FOR ADDITIONAL DISCOVERY, PLAINTIFFS' MOTION FOR SANCTIONS,
AND PLAINTIFFS' MOTION TO TRANSFER
(Dkt. Nos. 107, 130, 133, & 135)

February 23, 2012

PONSOR, U.S.D.J.

I. INTRODUCTION

This is a copyright infringement action brought by a group of Springfield-based artists -- Angel Martinez Alicea, Reynaldo Colon Vega, Freddy Montalvo, and Raul Rivera-Roldan -- seeking damages for breach of contract (Counts 1, 9, 10, and 11) and copyright infringement (Counts 4-6). Two former Plaintiffs have voluntarily dismissed their claims and a number of Defendants have already been eliminated from the case following motions to dismiss. The remaining Defendants, UMG Recordings, Inc. and Machete Music

("Machete"), have now filed a motion for summary judgment. (Dkt. No. 107.) In response, Plaintiffs have filed a motion to conduct additional discovery (Dkt. No. 130), a motion for sanctions (Dkt. No. 133), and a motion to transfer the case to the District of Puerto Rico (Dkt. No. 135). For the reasons stated below, the court will allow Defendants' motion for summary judgment and deny each of Plaintiffs' motions.

## II. BACKGROUND

In 2006, Gerry Capo Hernandez, a former Plaintiff in this case, responded to a message from Francisco Saldana, a former Defendant, who was trying to create a new musical group called Erre IX. Saldana invited Hernandez and three other musicians -- Plaintiff Angel Martinez Alicea, Plaintiff Freddy Montalvo, and Etienne Gagnon (not a party to this action) -- to Puerto Rico to work on songs for the group's first album, "Luny Tunes Presents: Erre IX." Plaintiff Reynaldo Colon Vega joined the group in 2007. Plaintiff Paul Rivera Roldan, who had already been working with Saldana for several years, was also recruited to produce songs for the Erre IX album. All Plaintiffs signed

either producer or artist agreements with Saldana's record label, Mas Flow, Inc. ("Mas Flow"). These agreements governed Plaintiffs' ownership of copyrights and entitlements to royalties and other payments.

Over the next several months, Plaintiffs and other musicians created numerous musical compositions, including eight songs that are at the center of this lawsuit. Plaintiffs delivered these songs to Saldana for exploitation. Versions of seven of the disputed songs appeared on the Erre XI album, while a version of the eighth song -- "Salgo Pa La Calle" -- appeared on another artist's album.

Plaintiffs claim that the sale and distribution of these songs violated their copyright interests in the underlying musical compositions. Plaintiffs further claim that they are entitled to damages for Defendants' alleged breach of several contracts.

Plaintiffs filed this action on January 5, 2010, alleging copyright infringement, breach of contract, and intentional and negligent infliction of emotional distress. All Defendants filed motions to dismiss. On January 11,

2011, the court adopted Magistrate Judge Neiman's Report and Recommendation allowing the motion to dismiss as to one group of Defendants for failure to state a claim and lack of personal jurisdiction. The court also dismissed the emotional distress claims against Machete and UMG Recordings. (Dkt. No. 60.) On October 6, 2011, the court adopted another of Magistrate Judge Neiman's Report and Recommendations, dismissing the claims against another group of Defendants for lack of personal jurisdiction. (Dkt. No. 126.) Plaintiffs have apparently now filed a separate action against all current and former Defendants in the District of Puerto Rico, alleging copyright infringement, breach of contract, declaratory judgment, emotional distress, and unjust enrichment.

### III. DISCUSSION

A. <u>Defendants' Motion for Summary Judgment</u>.

    1. <u>Standard of Review</u>.

    Under Fed. R. Civ. P. 56(a), a party is entitled to summary judgment if it can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The court must consider the facts in the light most favorable to the nonmoving party.  <u>Bos. & Me. Corp. v. Mass. Bay Transp. Auth.</u>, 587 F.3d 89, 98 (1st Cir. 2009).

   2. <u>Copyright Infringement Claims</u>.

   Plaintiffs allege that Defendants infringed their copyrights in the musical compositions of the eight disputed songs.  Defendants have moved for summary judgment, arguing that Plaintiffs have failed to state a copyright infringement claim because they have not registered the necessary copyrights.

   Copyright registration is a precondition to filing a copyright infringement claim.  17 U.S.C. § 411(a).  It is undisputed that, as of the date of the hearing on these motions, Plaintiffs did not have certificates of registration for copyrights of the musical compositions of any of the eight songs.[1]  However, Plaintiffs claim that

---

[1] Plaintiffs have only registered copyrights for the <u>sound recordings</u> of four of the disputed songs, not the musical compositions themselves.  "Copyright in a sound recording is not the same as, or a substitute for, copyright in the underlying musical composition."  (Dkt. No. 112, Ex. 1 (U.S. Copyright Office Circular 56A, "Copyright Registration of Musical Compositions and Sound Recordings").)

they have submitted to the Copyright Office completed applications, deposits, and fees for registration of all of the relevant copyrights.  They argue that submitting these materials is sufficient to satisfy the registration precondition of § 411(a).

There is a circuit split on what constitutes registration of a copyright.  Some circuits have held that a copyright is registered and a plaintiff may file suit as soon as the plaintiff's completed registration application is received by the Copyright Office ("the application approach").  See, e.g., Cosmetic Ideas, Inc. v. IAC/InterActiveCorp, 606 F.3d 612, 620-22 (9th Cir. 2010); Chi. Bd. of Edu. v. Substance, Inc., 354 F.3d 624, 631 (7th Cir. 2003); Apple Barrel Prods., Inc. v. Beard, 730 F.2d 384, 386-87 (5th Cir. 1984).  Others have required the Copyright Office to act on the application and issue an actual certificate of registration before allowing a plaintiff to bring an infringement claim ("the registration approach").  See, e.g., La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1202-04 (10th Cir. 2005); M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d

1486, 1489 (11th Cir. 1990).[2] The First Circuit has not considered this issue, although at least one district court in the circuit has adopted the application approach. See Forasté v. Brown Univ., 248 F. Supp. 2d 71, 77 (D.R.I. 2003).

Regardless of which approach this court chooses, Plaintiffs have not satisfied the registration precondition because they (1) lack registration certificates for the musical compositions and (2) have failed even to show that they submitted all of the necessary application materials for registration. To satisfy the statutory requirements for registration, a copyright holder must submit an application, fee, and "deposit copy" of the work to be copyrighted to the Copyright Office. 17 U.S.C. § 408(a); Forasté, 248 F. Supp. 2d at 77. At a hearing on these motions, Plaintiffs conceded that there is a dispute over whether the copies they submitted to the Copyright Office meet all of the

---

[2] Both of these cases have been abrogated in part by Reed Elsevier, Inc. v. Muchnick, in which the U.S. Supreme Court held that, although copyright registration is a precondition to filing a claim, it "does not restrict a federal court's subject-matter jurisdiction." 130 S.Ct. 1237, 1241, 176 L.Ed.2d 18 (2010).

requirements for deposit copies, and the Copyright Office has not yet taken a position on whether it has received all of the required materials for registration. In other words, Plaintiffs cannot show that they have even properly applied for copyright registration of the pertinent compositions. Consequently, under both the application approach and the registration approach, Plaintiffs have not registered their copyrights of the musical compositions, as required by § 411(a). See Geoscan, Inc. of Tex. v. Geotrace Technologies, Inc., 226 F.3d 387, 393 (5th Cir. 2000) (upholding grant of summary judgment to Defendant on copyright claims because "although [plaintiff] had filed an application, paid a fee, and made a deposit with the Copyright Office, the deposit was not a complete copy of the original source code, thus [plaintiff] had not fulfilled all the statutory formalities necessary to register its copyright and have 'ownership' in its software for the purposes of a copyright infringement claim").

While several courts have permitted plaintiffs to correct defective copyright registrations or applications and proceed with lawsuits that were filed in violation of §

411(a), see Forasté, 248 F. Supp. 2d at 78 (collecting decisions), Plaintiffs here have had more than enough time to obtain registration certificates or, at the very least, to obtain clarity on the issue of their deposit copies. After more than two years of litigation, Plaintiffs still cannot show that they have fulfilled all of the statutory requirements for copyright registration.  The court will therefore allow Defendants' motion for summary judgment on the copyright infringement claims (Counts 4-6).

    3. **Breach of Contract Claims**.

    The Third Amended Complaint includes four counts for breach of contract.  As to all of these counts, the court will grant summary judgment for failure to state a claim.

    Count 1 arises from unspecified agreements between Plaintiffs and Defendants and alleges that Defendants failed to pay Plaintiffs the advances, fees, and royalties owed pursuant to those agreements.  It is unclear to which agreements this Count refers, and there is no evidence on the record of any direct agreement between Plaintiffs and Defendants.  The record currently before this court shows that Plaintiffs entered into contracts only with Mas Flow.

Mas Flow and its successors in interest are no longer parties to this action.

Similarly, Count 9 alleges that Plaintiff Roldan entered into an agreement with former Defendants Saldana, Victor Cabrera, and LT's Benjamin Records, Inc. ("LT"), which provided that Roldan was to receive mechanical and other royalties for his work on unspecified projects. There is no evidence of any direct agreement between Roldan and Defendants.[3]

Although not entirely clear from the filings, Plaintiffs appear to argue that a provision of a profit share agreement between Saldana, LT, and Defendants -- which transferred "[a]ll artist contracts owned or controlled by

---

[3] During the hearing on these motions, Plaintiffs argued that Roldan had a direct contractual relationship with Defendants regarding songs titled "Mirala Bien" and "Paleta." These claims, however, do not appear anywhere in the complaint. The complaint contains no mention of this contract and does not name the two songs allegedly at the center of the contract. There is no evidence of the contract in the record. Plaintiffs point to Roldan's copyright of the two songs -- of which there is no evidence in the record -- and to an exhibit that lists percentages next to the names of the songs, neither of which amounts to a legally-binding contract. In fact, Plaintiffs admitted during argument that Roldan did not actually sign any contract regarding these two songs.

Mas Flow, LT, [or] any affiliated companies" to "the Label" that was created by that agreement -- constituted an assignment of Saldana's, LT's, and Mas Flow's duties under their contracts with Plaintiffs to Defendants.  (Dkt. No. 110, Ex. A, ¶ T.)  However, even if this provision could be characterized as an assignment -- which is far from clear -- Plaintiffs admit that only Gerry Capo Hernandez's contract was actually transferred to the Label under this provision, and Hernandez is no longer a Plaintiff in this case.  None of the remaining Plaintiffs' contracts was affected by this provision.  Consequently, even if Plaintiffs had been denied any advances, fees, and royalties owed to them under their agreements with Saldana, Cabrera, LT, and Mas Flow, they cannot hold Defendants responsible for this breach.

Count 10 alleges that Plaintiffs are third-party beneficiaries of the distribution agreement between Mas Flow and Defendants.  To establish third-party beneficiary status, a plaintiff must prove that "the language and circumstances of the contract" demonstrate that the parties "clear[ly] and definite[ly] intended the beneficiaries to benefit from the promised performance."  Miller v. Mooney,

431 Mass. 57, 62, 725 N.E.2d 545 (2000).  Plaintiffs have failed to identify any provision of the distribution agreement from which they could receive any benefit.  The agreement provided only that Mas Flow would create master recordings, which would then be distributed by Machete.  The agreement did not mention any Plaintiff and did not evidence any intent to benefit any third party.

Finally, Count 11 alleges that Plaintiffs are "direct beneficiaries" of the profit share agreement.  (Third Am. Compl. ¶ 93.)  The profit share agreement is between Defendants, Saldana, and LT; Plaintiffs are clearly not direct parties to this agreement.  To the extent Plaintiffs allege that they are third-party beneficiaries of the profit share agreement, Plaintiffs have failed to plead sufficient facts to support this theory of contractual liability.  The only Plaintiff even named in the profit share agreement is Roldan (also known as "Thilo").  (Dkt. No. 110, Ex. A, ¶ E.2, providing that LT and Saldana will "furnish the services of the producers known as the Underage, Tainy, A & A, and Thilo (the "LT Producers") to the Label" and that "LT will be solely responsible for compensating the LT

producers.")  However, any benefit Roldan may have received from this agreement was incidental only.  <u>Harvard Law Sch. Coal. for Civil Rights v. President & Fellows of Harvard Coll.</u>, 413 Mass. 66, 71, 595 N.E.2d 316 (1992) ("Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract.").

Because Plaintiffs have failed to establish any contractual relationship with Defendants, the Defendants' motion for summary judgment on the breach of contract claims will be allowed.

B. <u>Plaintiffs' Motion for Additional Discovery</u>.

Plaintiffs have filed a motion pursuant to Fed. R. Civ. P. 56(d), requesting that the court give Plaintiffs additional time to take discovery before ruling on Defendants' motion for summary judgment.  Specifically, Plaintiffs ask for time to depose the keeper of records and Gus Lopez, Machete's former president.  To invoke the protections of Rule 56(d), a litigant must establish:

> (I) good cause for his inability to have discovered or marshaled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of

>how those facts, if collected, will suffice to defeat
>the pending summary judgment motion.

Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 10 (1st Cir. 2007). Plaintiffs have not met this burden.

First, Plaintiffs have failed to show good cause for their failure to depose the witnesses earlier. Plaintiffs filed this action in January 2010 and, in February 2010, stipulated to an August 2, 2011 discovery cutoff. Plaintiffs did not actually commence discovery until July 29, 2011, days before the discovery deadline. Plaintiffs contend that a tornado that hit their counsel's office on June 1, 2011 caused the delay. However, Plaintiffs had from January 2010 until June 2011 at least to begin conducting discovery and failed to do so.

Furthermore, Plaintiffs have not shown that taking the additional depositions would be likely to uncover facts sufficient to defeat the pending motion for summary judgment. Plaintiffs argue that the depositions will aid in the authentication of documents attached as exhibits to their opposition to Defendants' motion. Defendants have only challenged the authenticity of one of these documents

-- an invoice that appears to be issued by Mas Flow to Montalvo, charging $5,000 for, what appear to be, songs for the Erre XI album.  (Dkt. No. 118, Ex. E.)  The invoice at no point mentions Defendants and it is entirely unclear how this invoice would tend to support Plaintiffs' claim of a contractual relationship between Plaintiffs and Defendants.  Plaintiffs' Rule 56(d) motion will be denied.

C. <u>Plaintiffs' Motion for Sanctions</u>.

Plaintiffs have also moved to impose sanctions on Defendants, arguing that certain arguments and factual assertions made by Defendants are false and a violation of Fed. R. Civ. P. 11(b).  As well as appearing to lack any substantive merit, this motion is also procedurally defective because Plaintiffs have not complied with Rule 11's "safe harbor" provision.  Fed. R. Civ. P. 11(c)(2) (requiring moving party to wait twenty-one days after serving a Rule 11 motion for sanctions on opposing counsel before submitting the motion to the court).  It is undisputed that Plaintiffs did not serve Defendants with their motion before filing it with the court.  The court will therefore deny Plaintiff's motion for sanctions.

D. **Plaintiffs' Motion to Transfer**.

Finally, Plaintiffs have moved to transfer this case to the District of Puerto Rico and consolidate it with the parallel case now pending in that district. Plaintiffs argue that, because this court dismissed the counts against some of the Defendants in this action for lack of personal jurisdiction, the entire case -- including claims against the Defendants who have already been dismissed from the case -- should be transferred to the District of Puerto Rico pursuant to 28 U.S.C. § 1631.

The court has already ruled on the motions to dismiss the counts against several Defendants, and it is too late for Plaintiffs now to request that the action be transferred instead of dismissed.[4]  Cf. Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 43 (1st Cir. 2006) ("A dismissed action is a nullity, so a court desirous of effectuating a transfer under section 1631 should not dismiss the action but, rather, after making a finding that it lacks jurisdiction, should order transfer based on that

---

[4] Plaintiffs did not request a transfer when opposing any of the Defendants' motions to dismiss.

16

finding."). The court has subject matter jurisdiction over all of the Defendants that remain in this case. Thus, § 1631 does not apply. See 28 U.S.C. § 1631 (noting that the court must find "a want of jurisdiction" before transferring). Plaintiffs' motion to transfer will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 107) is hereby ALLOWED; Plaintiffs' motion for additional discovery (Dkt. No. 130) is hereby DENIED; Plaintiffs' motion for sanctions (Dkt. No. 133) is hereby DENIED; and Plaintiffs' motion to transfer (Dkt. No. 135) is hereby DENIED. The clerk will enter judgment for Defendants. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge